Karen Mauldin WHORTON  *v.*  Jerry W. DIXON, M.D.

04-1031                                    214 S.W.3d 225

Supreme Court of Arkansas
Opinion delivered September 29, 2005

*David H. Williams*; and *Belew & Bell*, by: *John M. Belew*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Overton S. Anderson* and *Brett D. Watson*, for appellee.

*Welch & Kitchens*, by: *Morgan E. Welch*, amicus curiae.

ANNABELLE CLINTON IMBER, Justice. In this appeal, Appellant Karen Mauldin Whorton ("Whorton") challenges the constitutionality of Ark. Code Ann. § 16-114-207(3) (1987), which precludes a medical care provider from having to give expert testimony against himself or herself as to any matters set forth in Ark. Code Ann. § 16-114-206 (1987) regarding the plaintiff's burden of proof in an action for medical injury. The circuit court rejected Whorton's constitutional challenge below. In her sole point on appeal, Whorton argues that section 16-114-207(3) violates the equal protection clauses of the Arkansas and United States Constitutions. She further suggests that section 16-114-207(3) is "special legislation," which is prohibited under Amendment 14 to the Arkansas Constitution, and that the legislature's enactment of the challenged statutory provision violates the separation-of-powers doctrine. For the reasons stated below, we affirm.

The facts giving rise to this constitutional challenge are as follows. Whorton filed a medical malpractice lawsuit against Appellee Jerry W. Dixon, M.D., Saline Memorial Hospital, and St.

Paul Fire and Marine Insurance Company as the liability carrier for Saline Memorial Hospital. In her complaint, Whorton alleged that Dr. Dixon was negligent in the "removal of lymph node masses by virtue of his severing the nerve which enervates the trapezius muscle and left paraspinal musculature, and in failing to properly evaluate, diagnose and treat her symptoms as set forth hereinabove." Moreover, she asserted that Saline Memorial Hospital was vicariously liable for negligent conduct which proximately caused her damages. In discovery, counsel for Dr. Dixon instructed him not to answer certain questions posed during his deposition, citing Ark. Code Ann. § 16-114-207(3) as his authority. Similarly, Dr. Dixon relied on the same statute when he moved in limine to prevent any questioning of him at trial regarding the standard of care. Meanwhile, Whorton filed a motion requesting a declaration that section 16-114-207(3) is unconstitutional. The circuit court denied the motion on the ground that Whorton failed to meet her burden of proving the statute unconstitutional.

At trial, Whorton called Dr. Andy Heiskell, a general surgeon, as an expert witness to testify that Dr. Dixon's conduct breached the applicable standard of care in that he failed to adequately warn Whorton about the risk that the nerve could be severed in the surgery, as well as the consequences of such damage, and he failed to see several signs post-surgery that clearly indicated the nerve had been severed. Dr. Heiskell opined that if the nerve severance had been caught earlier, the nerve could have been reconnected.

Dr. Dixon testified on his own behalf and called his own expert witness, Dr. Charles Mabry, also a general surgeon. Dr. Mabry refuted the testimony offered by Dr. Heiskell, opining that Dr. Dixon could not have diagnosed an injury to the spinal accessory nerve during the time he continued to treat Whorton post-surgery. It was Dr. Mabry's opinion that scar tissue caused by the surgery eventually severed the spinal accessory nerve. Ultimately, the jury found in favor of Dr. Dixon. Whorton now brings a timely appeal. We have jurisdiction of this appeal as it involves a question of law concerning the validity, construction, or interpretation of an act of the General Assembly. Ark. Sup. Ct. R. 1-2(b)(6) (2005).

Whorton's overarching point on appeal is that the circuit court erred in upholding the constitutionality of Ark. Code Ann. § 16-114-207(3). Before we review the circuit court's decision, we must first determine what standard of review is appropriate.

Whorton argues on appeal that strict-scrutiny review[1] is required because section 16-114-207(3) infringes on a fundamental right. Specifically, Whorton asserts her fundamental rights were violated when (1) Dr. Dixon's counsel used the challenged provision to thwart Whorton's right to fully question Dr. Dixon during his deposition and when (2) Whorton was not allowed to cross-examine Dr. Dixon at trial as she would any other witness. In reply, Dr. Dixon points out that this court has consistently applied a rational-basis review[2] to all constitutional challenges to the Arkansas Medical Malpractice Act, Ark. Code Ann. § 16-114-201 et seq. (1987). See Eady v. Lansford, 351 Ark. 249, 92 S.W.3d 57 (2002); Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683 (2001); Adams v. Arthur, 333 Ark. 53, 969 S.W.2d 598 (1998).

Notwithstanding Whorton's contention on appeal that strict scrutiny is the appropriate standard of review, she never made that argument below. In fact, at the hearing on her motion, Whorton failed to object when Dr. Dixon applied the rational-basis standard of review. As a result, rational-basis review was the test accepted and used by the circuit court in reaching its decision. In order to preserve an argument for appeal, the issue must be made and developed before the circuit court. Raymond v. State, 354 Ark. 157, 118 S.W.3d 567 (2003)(citing National Bank of Commerce v. Quirk, 323 Ark. 769, 918 S.W.2d 138 (1996) and Drummond v. State, 320 Ark. 385, 897 S.W.2d 553 (1995)). Accordingly, because Whorton failed to argue strict scrutiny as the appropriate test to the circuit court, we are precluded from considering it for the first time on appeal.

For her sole point on appeal, Whorton contends section 16-114-207(3) is unconstitutional because it violates the equal protection clause of the Fourteenth Amendment to the United

---

[1] When a statute infringes on a fundamental right, it cannot survive unless a "compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out the state interest." Jegley v. Picado, 349 Ark. 600, 80 S.W.3d 332 (2002).

[2] Under a rational-basis review, the party challenging the legislation has the burden of proving that the act is not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts. Arkansas Hospital Assn v. Arkansas State Board of Pharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989).

States Constitution[3] and the equal protection clause in Article 2, section 3 of the Arkansas Constitution.[4] Moreover, she claims that the challenged statutory provision is invalid as special legislation under Amendment 14 of the Arkansas Constitution.[5] Arkansas Code Annotated Section 16-114-207 states:

> In any action for medical injury:
>
> (1) Rule 702 of the Uniform Rules of Evidence shall govern the qualifications of expert witnesses;
>
> (2) No witness whose compensation for his services is in any way dependent on the outcome of the case shall be permitted to give expert testimony;
>
> (3) No medical care provider shall be required to give expert opinion testimony against himself or herself as to any of the matters set forth in § 16-114-206 at a trial. However, this shall not apply to discovery. Discovery information can be used at a trial as in other lawsuits.

Ark. Code Ann. § 16-114-207. Under the plain language of this statute, subsection (3) precludes a medical care provider from being required to give expert testimony against himself or herself at trial regarding matters set forth in Ark. Code Ann. § 16-114-206. Section 16-114-206 states:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

---

[3] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

[4] Article 2, section 3 of the Arkansas Constitution states, "The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition."

Whorton also cites Article 2, Section 18 of the Arkansas Constitution, Privileges and Immunities, and Article 2, Section 13 of the Arkansas Constitution, Redress of Wrongs. Because she does nothing more than cite those sections, we limit our analysis to the equal protection clause in the Arkansas Constitution.

[5] Amendment 14 of the Arkansas Constitution states, "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

(2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

(3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred;

(b)(1) Without limiting the applicability of subsection (a) of this section, when the plaintiff claims that a medical care provider failed to supply adequate information to obtain the informed consent of the injured person, the plaintiff shall have the burden of proving that the treatment, procedure, or surgery was performed in other than an emergency situation and that the medical care provider did not supply that type of information regarding the treatment, procedure, or surgery as would customarily have been given to a patient in the position of the injured person or other persons authorized to give consent for such a patient by other medical care providers with similar training and experience at the time of the treatment, procedure, or surgery in the locality in which the medical care provider practices or in a similar locality.

(2) In determining whether the plaintiff has satisfied the requirements of subdivision (b)(1) of this section, the following matters shall also be considered as material issues:

(A) Whether a person of ordinary intelligence and awareness in a position similar to that of the injured person or persons giving consent on his or her behalf could reasonably be expected to know of the risks or hazards inherent in such treatment, procedure, or surgery;

(B) Whether the injured party or the person giving consent on his or her behalf knew of the risks or hazards inherent in such treatment, procedure, or surgery;

(C) Whether the injured party would have undergone the treatment, procedure, or surgery regardless of the risk involved or whether he or she did not wish to be informed thereof; and

(D) Whether it was reasonable for the medical care provider to limit disclosure of information because such disclosure could be expected to adversely and substantially affect the injured person's condition.

Ark. Code Ann. § 16-114-206 (1987). Whorton specifically maintains that section 16-114-207(3) violates her right to a fair trial, the right to cross-examine, and the right to confrontation. In support of the proposition that section 16-114-207(3) violates her right to a fair trial, Whorton argues that she lost the right to fairly cross-examine Dr. Dixon and that her right to "liberal and far ranging" discovery was compromised.

It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality; every act carries a strong presumption of constitutionality, and before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. *Eady v. Lansford, supra.* Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality. *Id.* The heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.* Here, in order to prove that section 16-114-207(3) violates the equal protection clause, Whorton would have to demonstrate there is no rational-basis for the challenged proscription. *Id.* Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Id.* This presumption places the burden of proof on the party challenging the legislation to prove its unconstitutionality. *Id.*

The test is the same for cases in which it is alleged that a statute is unconstitutional special legislation. *Eady v. Lansford, supra.* Legislation is special "if by some inherent limitation or classification it *arbitrarily* separates some person, place or thing from those upon which, but for such separation, it would operate." *Id.* (*citing Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993)). The determinative factor is whether the General Assembly acted in an arbitrary manner to separate one class of persons from another, and we apply the rational-basis test to determine whether such a separation is arbitrary. *Id.*

The policy behind section 16-114-207(3) is expressly stated in the emergency clause of the Medical Malpractice Act:

It is hereby found, determined and declared by the General Assembly that the threat of legal actions for medical injury have resulted in

increased rates for malpractice insurance which in turn causes and contributes to an increase in health care costs placing a heavy burden on those who can least afford such increases and that the threat of such actions contributes to expensive medical procedures to be performed by physicians and others which otherwise would not be considered necessary[,] and that this Act should be given effect immediately to help control the spiraling cost of health care.

Act 709 of 1979. In reviewing this clause in other cases challenging provisions of the Medical Malpractice Act, we have stated, "It is made clear by the legislature that the objective of the [Medical Malpractice] Act is to control rapidly increasing health care costs." *Eady v. Lunsford*, 351 Ark. at 257, 92 S.W.3d at 62. *See also Raley v. Wagner, supra; Adams v. Arthur, supra.* As previously stated, under the rational-basis test, the challenged statute is presumed constitutional and rationally related to achieving the legitimate governmental objective set forth above in the emergency clause. *Id.* Whorton has offered no proof that the General Assembly acted arbitrarily, or that the legislation is not rationally related to achieving the stated objective under any reasonably conceivable fact situation, beyond a bare assertion that the statute's goal of reducing medical costs and malpractice premiums would not be achieved through the enforcement of Ark. Code Ann. § 16-114-207(3).[6] Thus, she failed to overcome the strong presumption of constitutionality.

In analyzing a very similar statute, the New Hampshire Supreme Court concluded that its statute was constitutional and did not violate equal protection of the law:

> We find nothing objectionable in the legislature's decision to grant a medical malpractice defendant the privilege not to give expert opinion testimony against himself. RSA 507-C:3 III (Supp.1979). If a plaintiff's claim is a legitimate one, he should be able to find somewhere in or out of the State at least one qualified expert witness who will testify for him. Moreover, this provision does not unduly restrict the rights of malpractice plaintiffs. As we construe it, it does not prevent the plaintiff from requiring the defendant to testify regarding factual issues but only prevents him from requiring the defendant to give his expert opinion on matters such as the

---

[6] At oral argument, Whorton admitted that no evidence was presented to the circuit court to support her assertion.

relevant standard of care and proximate cause. Furthermore, the privilege not to testify is lost if the defendant voluntarily gives expert opinion testimony favorable to himself.

*Carson v. Maurer*, 120 N.H. 925, 935, 424 A.2d 825, 832-33 (1980). Under this analysis, section 16-114-207(3) would not prevent Whorton from having Dr. Dixon testify regarding factual issues; instead, it only prevented her from requiring Dr. Dixon to give his expert opinion as to the relevant standard of care and proximate cause. In fact, Whorton was allowed to introduce her own expert to attest to the standard of care. Moreover, if Dr. Dixon had offered a favorable expert opinion at trial, the "privilege" would have been lost, and thus, Whorton would have been able to seek unfavorable expert testimony from Dr. Dixon.

■ Whorton also contends that equal protection was violated and her right to a fair trial was severely constrained by her inability to engage in effective discovery. In fact, the statute expressly states that the "privilege" does not extend to discovery. Ark. Code Ann. § 16-114-207(3).[7] While it may have been error for the circuit court to deny Whorton's motion to compel Dr. Dixon "to resubmit to a 'follow-up' deposition . . . and answer the questions posed to him," that issue is not presented to us on appeal.

■ Finally, we decline to address the merits of Whorton's argument that the legislature's enactment of section 16-114-207(3) violates the separation-of-powers doctrine. This court will not strike down a legislative act on constitutional grounds without first having the benefit of a fully developed adversary case. *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003) (citing *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996) and *Drummond v. State*, 320 Ark. 385, 897 S.W.2d 553 (1995)). In her motion challenging the constitutionality of the statute, Whorton made no reference to the separation-of-powers doctrine or Article 4 of the Arkansas Constitution. Furthermore, during the hearing on the motion, her counsel only mentioned the phrase "separation of powers" in the context of another case. The circuit

---

[7] At oral argument, Whorton also raised a new argument not addressed in her brief. Specifically, she asserted the language in section 16-114-207(3) pertaining to discovery is unconstitutionally vague. This argument, however, was not made below. We will not consider arguments made for the first time on appeal. *AT&T Communications of the Southwest, Inc. v. Arkansas Public Service Comm'n*, 344 Ark. 188, 40 S.W.3d 273 (2001).

court did not have the benefit of development of the law on the separation-of-powers issue. We will not address an issue that is fully developed for the first time on appeal. *Raymond v. State, supra.* This argument is therefore procedurally barred.

Affirmed.