Honorable L.T. SIMES *v.* ARKANSAS JUDICIAL DISCIPLINE & DISABILITY COMMISSION

06-725 247 S.W.3d 876

Supreme Court of Arkansas
Opinion delivered January 25, 2007

*Kaplan, Brewer, Maxey & Haralson, P.A.*, by: *Silas H. Brewer, Jr.*, for petitioner.

*Frank J. Wills, III*, for respondent.

PAUL DANIELSON, Justice. Petitioner, Judge L.T. Simes, petitions this court to grant a writ of *certiorari* to the respondent, the Arkansas Judicial Discipline and Disability Commission (Judicial Commission), quashing a letter of admonishment and declaring it invalid. Petitioner raises several points in support of his argument: (1) that the Judicial Commission did not meet its burden of showing a compelling state interest for enactment of Canon 5C(2) sufficient to justify infringement of protected speech under the First Amendment; (2) that the Judicial Commission did not meet its burden of showing that Canon 5C(2) is narrowly tailored to serve any compelling interest this court may find is consistent with the First Amendment; (3) that Canon 5C(2) is void in its entirety if found to be an infringement on protected First Amendment speech because of overbreadth; and, alternatively, (4) that there was not sufficient evidence to support the findings of the Judicial Commission. We disagree with all points and deny petitioner's request to issue the writ of *certiorari* and to quash the admonishment.

Petitioner was reelected as circuit judge of the First Judicial District in 2004. Following that reelection, Charles Halbert, Jr., a practicing attorney who was a political opponent of the petitioner's, filed a complaint with the Judicial Commission alleging that, during the campaign, the petitioner personally called attorneys with cases pending in his court and solicited campaign contributions from them. Two of the attorneys identified by Halbert provided sworn statements to the Judicial Commission. One stated that the petitioner called him directly at his office seeking a campaign contribution and also that the petitioner called him after the complaint was filed with the Judicial Commission to discover how the attorney was going to respond to the Commission's inquiries. The second attorney gave both a written response and a sworn statement to the Judicial Commission that petitioner, in a telephone call that originally concerned another matter, had asked for the attorney's support and for a campaign contribution. This second attorney stated that he believed that he was the first to raise the subject of money when he apologized for not having contributed to the campaign, but that the petitioner then indicated that he

needed some money for the filing period and asked if that attorney could contribute. A third attorney was identified as a person the petitioner personally solicited for campaign contributions. However, that attorney informed the Judicial Commission that he had no personal knowledge of any direct solicitation by the petitioner and that he had not been personally solicited.

By letter dated June 14, 2004, the petitioner was advised of the complaint filed against him. The petitioner responded by letter dated February 1, 2005, denying any personal solicitation, stating that the attorneys who confirmed the solicitation to the Judicial Commission had written letters to him denying that he solicited them for contributions, and opining that the allegations were in retaliation and were "sour grapes."

On May 16, 2006, a probable-cause hearing was held to investigate the complaint. The report filed by the Judicial Commission found, among other things, that:

(1) the petitioner personally solicited campaign contributions from two attorneys during telephone calls,

(2) one of the attorneys appeared before the petitioner between one and four times a year, although he did not have any cases pending before the petitioner at the time of solicitation, and

(3) the other attorney appeared before the petitioner about two or three times a quarter and had cases pending in the petitioner's court at the time of the solicitation.

The Judicial Commission, by a vote of six to one, found the petitioner's actions in violation of Canons 1 and 5C(2) of the Arkansas Code of Judicial Conduct, and a letter of admonishment was issued to the petitioner on May 23, 2006. The petitioner does not challenge the Judicial Commission's finding with respect to Canon 1.[1]

---

[1] Canon 1 of the Arkansas Code of Judicial Conduct provides:

Canon 1. A judge shall uphold the integrity and independence of the judiciary. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.

Ark. Code of Judicial Conduct Canon 1.

## I. Standard of Review

Our standard of review is found in Rule 12E of our Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission. Rule 12E instructs this court to review the entire record and to file a written opinion and judgment either accepting, rejecting, or modifying, in whole or in part, the findings and recommendations of the Judicial Commission. *See* Ark. Jud. Disc. & Disab. Comm'n R. 12E. This court has previously held that it will not reverse the Judicial Commission's findings unless they are clearly erroneous, and our review under certiorari is limited to errors appearing on the face of the record. *See Griffen v. Ark. Judicial Discipline & Disability Comm'n*, 355 Ark. 38, 130 S.W.3d 524 (2003).

We construe court rules using the same rules of construction as we use to construe statutes. *See JurisDictionUSA, Inc. v. Loislaw.com, Inc.*, 357 Ark. 403, 183 S.W.3d 560 (2004). In Arkansas, statutes carry a strong presumption of constitutionality and their constitutional incompatibility must be clear before they will be held unconstitutional. *See Whorton v. Dixon*, 363 Ark. 330, 214 S.W.3d 225 (2005).

While the Judicial Commission contends that strict-scrutiny analysis is not appropriate in this case, this court has recognized that the strict-scrutiny test must be applied in cases such as this where the fundamental right of free speech is inhibited. *See Griffen v. Ark. Judicial & Disability Comm'n, supra*. While a regulation limiting solicitation or acceptance of campaign contributions may seem to limit a judicial candidate's conduct rather than his political speech, precedent of the United States Supreme Court instructs otherwise. *See Buckley v. Valeo*, 424 U.S. 1 (1976); *Republican Party of Minnesota v. White*, 416 F.3d 738 (8th Cir. 2005). Because Canon 5 directly regulates what has been deemed political speech, it is subject to strict scrutiny, which requires it to be narrowly tailored to serve a compelling governmental interest. *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182 (1999).

## II. Constitutionality of Canon 5C(2)

The pertinent part of Canon 5C(2) reads:

(2) A candidate shall not personally solicit or accept campaign contributions. A candidate may, however, establish committees of responsible persons to conduct campaigns for the candidate through media advertisements, brochures, mailings, candidate forums and

other means not prohibited by law. Such committees may solicit and accept reasonable campaign contributions, manage the expenditure of funds for the candidate's campaign and obtain public statements of support other than from political parties for his or her candidacy. Such committees are not prohibited from soliciting and accepting reasonable campaign contributions and public support from lawyers.

Ark. Code of Judicial Conduct Canon 5C(2).

Petitioner's attack on Canon 5C(2) is based upon the Eighth Circuit's opinion in *Republican Party of Minnesota v. White*, 416 F.3d 738 (8th Cir. 2005), and claims that Minnesota's Canon 5 is identical to Arkansas's Canon 5. A review of *White*'s history is necessary to establish how the decision applies to the instant case. The Eighth Circuit explained the history of the case as follows:

> The dispute commenced in the United States District Court for the District of Minnesota. At issue were the so called "announce," "partisan-activities," and "solicitation" clauses of Canon 5 of the Minnesota Supreme Court's canons of judicial conduct. The district court rejected Appellants' First and Fourteenth Amendment claims, *Republican Party of Minn. v. Kelly*, 63 F. Supp. 2d 967 (D. Minn. 1999), and granted summary judgment to Appellees: the Minnesota Board on Judicial Standards, the Minnesota Lawyers Professional Responsibility Board, and the Minnesota Office of Lawyers Professional Responsibility. *Id.* at 986. On appeal, a divided panel of this court affirmed the district court. *Republican Party of Minn. v. Kelly,* 247 F.3d 854 (8th Cir. 2001). We denied Appellants' en banc suggestion. The Supreme Court granted certiorari and held, *Republican Party of Minn. v. White,* 536 U.S. 765 (2002), that the announce clause violates the First Amendment, reversing our holding in *Kelly*. The Court remanded the case for further proceedings consistent with its opinion. *Id.* at 788. Upon remand, the same panel, divided as before, again affirmed the district court's ruling on the solicitation clause and remanded for further consideration in light of *White* of the partisan-activities clause. *Republican Party of Minn. v. White,* 361 F.3d 1035 (8th Cir. 2004) (vacated). We granted Appellants' request for en banc review, vacating the panel opinion.

*White,* 416 F.3d at 744. It then held that, in addition to the announce clause, both the partisan-activities clause and the solicitation clause of Minnesota's Canon 5 violated the First Amendment. *See id.*

Contrary to the petitioner's argument, Arkansas's Canon 5 is not identical to the Minnesota canon discussed by the Eighth Circuit in *White*. Canon 5B(2) of the Minnesota Code of Judicial Conduct read, in part, that "[a] candidate shall not personally solicit or accept campaign contributions or personally solicit publicly stated support." 416 F.3d at 745 (quoting Minn. Code of Judicial Conduct Canon 5B(2)). The canon further provided that "A candidate may, however, establish committees to conduct campaigns for the candidate . . . . *Such committees shall not disclose to the candidate the identity of campaign contributors nor shall the committee disclose to the candidate the identity of those who were solicited for contribution or stated public support and refused such solicitation.*" *Id.* at 745 (emphasis added).

We agree with petitioner that the central issue now before this court is the extent to which the principles announced by the Eighth Circuit in *White* are applicable and binding in this case. As set forth above, there are key distinctions between Canon 5C(2) of the Arkansas Code of Judicial Conduct and Minnesota's Canon 5. Further, Arkansas's Canon 5 has come under the scrutiny of this court in a much different context than the Minnesota canon that was considered by the *White* court.

The *White* court specifically noted that the candidates challenged "only the fact that they cannot solicit contributions from large groups and cannot, through their campaign committees, transmit solicitation messages above their personal signatures." *White*, 416 F.3d at 745. Thus, the court's conclusion in *White* that "the solicitation clause's proscriptions against a candidate personally signing a solicitation letter or making a blanket solicitation to a large group, does not advance any interest in impartiality articulated as a lack of bias for or against a party to a case," does not apply to the facts in this case. *Id.* at 765-66. This is so because the *White* court was faced with a different rule and a very different factual situation than the conduct challenged in the case before us. The Judicial Commission found that the petitioner made direct, personal solicitations to two different attorneys who practiced in his court, one of whom had cases currently pending in the judge's court. Both attorneys were placed in a situation where they were forced to personally and directly accept or reject the request in response to the petitioner's direct solicitation.

We have held that decisions by the Eighth Circuit Court of Appeals are not binding precedent on this court when the cases are factually distinguishable. *See Romine v. Ark. Dep't of Envtl. Quality,*

342 Ark. 380, 40 S.W.3d 731 (2000). We find that the instant case is factually distinguishable and, therefore, do not view the Eighth Circuit's decision in *White* as decisive of this case.

### a. Compelling State Interest

The Eighth Circuit in *White,* as well as petitioner here, recognized that there is a compelling state interest in the independence and impartiality of its elected judges. *See White,* 416 F.3d 738. Petitioner argues, however, that there is not a compelling state interest, as required by strict scrutiny, to justify the restriction on speech found in Canon 5C(2). The Judicial Commission contends that both judicial impartiality and avoiding the appearance of impropriety serve as compelling state interests that are sufficient to justify the infringement on speech set forth by Canon 5C(2).

The United States Supreme Court explored possible definitions of judicial impartiality in *Republican Party of Minnesota v. White,* 536 U.S. 765 (2002), when faced with determining the constitutionality of the announce clause of Minnesota's Canon 5, which prohibited candidates for judicial election from announcing their views on disputed legal or political issues.

The first meaning of impartiality determined by the Court was the lack of bias for or against either party involved in a proceeding, assuring equal application of the law. *See White,* 536 U.S. 765. While the Court found that Minnesota's announce clause did not serve that interest, it did not reject that interest as one that would be compelling. *See id.* Likewise, the Eighth Circuit Court of Appeals observed that "[k]eeping candidates, who may be elected judges, from directly soliciting money from individuals who may come before them certainly addresses a compelling state interest in impartiality[.]" *White,* 416 F.3d at 765. Accordingly, we find that Arkansas has a compelling interest in impartiality, as a lack of bias for or against either party involved in a proceeding, where the direct solicitation of money by a judge is at issue, such as in the instant case.

The second meaning of impartiality the Supreme Court enunciated was as a lack of preconception in favor of or against a particular legal view, but the Court ultimately held that impartiality in that sense was not a compelling state interest. *See White,* 536 U.S. 765. And finally, the third meaning of impartiality enunciated

by the Supreme Court was open-mindedness, guaranteeing each litigant at least some chance to win the legal points in the case. *See id.* However, the Court did not pursue this last possibility, holding that the announce clause was not adopted for that purpose. *See id.*

 Our solicitation clause fundamentally differs from the announce clause analyzed by the Supreme Court in *White.* Therefore, we must determine whether impartiality, meaning open-mindedness, is an interest protected by the canon at issue in the instant case, Canon 5C(2). We hold that it is. Judicial candidates, once elected, are especially vulnerable to outside pressure from individuals and/or organizations that may have lent them financial aid during their campaign. *See, e.g., Republican Party of Minnesota v. White,* 416 F.3d 738 (8th Cir. 2005) (Gibson, J., dissenting). Certainly the state has a compelling interest in diminishing the possibility that judges, once in office, will be pressured to decide issues in favor of those who financially supported their campaign. Therefore, in addition to impartiality as it goes to bias, we conclude that the open-mindedness of judges is a sufficient compelling state interest.

The Judicial Commission has also raised the appearance of impropriety or impartiality as a compelling state interest. We have recognized that an "independent judiciary is essential for our society" and that the "judiciary cannot function without the trust and confidence of the public in the integrity and independence of its judges." *Huffman v. Ark. Judicial Discipline & Disability Comm'n,* 344 Ark. 274, 282, 42 S.W.3d 386, 392 (2001). In *Huffman,* we described the appearance of impropriety and impartiality as a "basic issue." *Id.,* 42 S.W.3d at 392.

 The state certainly has a compelling interest in the public's trust and confidence in the integrity of our judicial system. Allowing a judge to personally solicit or accept campaign contributions, especially from attorneys who may practice in his or her court, not only has the possibility of making a judge feel obligated to favor certain parties in a case, it inevitably places the solicited individuals in a position to fear retaliation if they fail to financially support that candidate. Attorneys ought not feel pressured to support certain judicial candidates in order to represent their clients. In addition, the public should be protected from fearing that the integrity of the judicial system has been compromised, forcing them to search for an attorney in part based upon the criteria of which attorneys have made the obligatory contribu-

tions. Thus, we take this opportunity to acknowledge that, in Arkansas, avoiding the appearance of impropriety is also a compelling state interest.

### b. Narrowly Tailored

The next issue left to be determined is whether Arkansas's Canon 5 is narrowly tailored to meet the state's interests in impartiality and avoiding the appearance of impropriety. Petitioner alleges that Canon 5C(2) is not narrowly tailored to serve those interests and that the rule should be void in its entirety, as it is overly broad.

The Eighth Circuit concluded that Minnesota's Canon 5 was not narrowly tailored to advance the interest of impartiality. See White, 416 F.3d 738. As previously noted, the White court held that "the solicitation clause's proscriptions against a candidate personally signing a solicitation letter or making a blanket solicitation to a large group, does not advance any interest in impartiality articulated as a lack of bias for or against a party to a case[.]" Id. at 765-66. Crucial to the court's analysis was the fact that the Minnesota Canon included additional language, specifically providing that a candidate's committee was prohibited from disclosing to the candidate those who did or did not contribute to the campaign. The court suggested that, because Minnesota's solicitation clause included such a provision, it was unlikely that a judicial candidate, if elected, would have a direct interest in reaching a conclusion for or against a particular litigant, and, for that reason, the regulation was not narrowly tailored. See id.

Similarly, the Supreme Court had previously determined that Minnesota's announce clause was not narrowly tailored to serve the interest of impartiality because it did not "restrict speech for or against particular parties, but rather speech for or against particular issues." Republican Party of Minnesota v. White, 536 U.S. at 776. We find these holdings inapplicable to the solicitation clause included in our Canon 5 because of the differences in the provisions, the factual differences in the cases, and because this case involves a direct, personal solicitation.

In the instant case, the petitioner was found to have made direct, personal solicitations. Even if our Canon 5 did include an additional provision such as Minnesota's, which prohibits a judge from being informed of his contributors, it would have played no role in this direct–solicitation scenario. Contrary to the Eighth

Circuit's finding in *White*, it is very likely in the instant case that the petitioner, or any other judge making such a personal solicitation, would have a "direct, personal, substantial, pecuniary interest in reaching a conclusion [for or] against [a particular litigant in a case]" based upon that litigant's support. *White*, 416 F.3d at 765. Without the restriction currently set forth in Canon 5C(2), a judge would be permitted to personally solicit or accept campaign contributions and to thwart the compelling state interests of avoiding the appearance of impropriety and judicial impartiality.

Implicit in the Supreme Court's and Eighth Circuit's opinions in *White* is that Minnesota's announce clause, partisan-activities clause, and solicitation clauses were pro-incumbent. *See White*, 416 F.3d 738. Arkansas's Canon 5 does not have a pro-incumbent character and, unlike the Minnesota canon in *White*, is narrowly tailored to meet the state's interest of impartiality and avoiding the appearance of impropriety.

Petitioner further argues that our canon is underinclusive and lacks narrow tailoring because judicial candidates are not barred from requesting funds for any purpose other than when it is related to a political campaign. However, we find it important to note that the solicitation clause of Canon 5 is not just one provision that this court has passed, but is part of an integrated system, designed to ensure a fair and impartial judiciary. In Arkansas, for example, judicial candidates who are incumbent judges, are precluded from using their office for fundraising or membership solicitation at any time. *See* Ark. Code of Judicial Conduct Canon 4C(3)(b)(iv). In addition, judges are prohibited from using the prestige of the office to advance any private interests or from conveying the impression that someone is in a special position to influence the judge. *See* Ark. Code of Judicial Conduct Canon 2(B). The Eighth Circuit stated that "[a] clear indicator of the compelling nature of an interest is whether the state has bothered to enact a regulation that guards the interest from all significant threats." *White*, 416 F.3d at 759. It is clear that Arkansas's Code of Judicial Conduct guards the interests from all significant threats.

Petitioner further argues that Canon 5C(2) is overly broad since, by its terms, it prohibits speech protected in the Eighth Circuit's *White* decision. He claims Arkansas's canon should be declared void in its entirety. However, as stated earlier, the solicitation issue in *White* was not a direct and personal one and the

speech found to be protected in *White* was held to be protected because Minnesota had a specific provision prohibiting judges from knowing who contributed to their campaign and who did not. *See White*, 416 F.3d 738. The court reasoned that Minnesota's solicitation clause's proscriptions against a candidate signing a solicitation letter or addressing a large group did not logically advance any interest in impartiality because a judge was prohibited from knowing which individuals actually responded with a contribution. *See id.* Here, Arkansas's Canon 5C(2) seeks to insulate judicial candidates from the solicitation and receipt of funds while leaving open, ample alternative means for candidates to raise the resources necessary to run their campaigns. To this end, Canon 5C(2) provides that candidates may establish campaign committees to conduct fundraising on their behalf.

The question ultimately posed to this court is whether the First Amendment precludes Arkansas from furthering its interests in a fair and impartial judiciary through the speech restriction in Canon 5C(2). We hold it does not. It is further the opinion of this court that a judicial candidate's personal solicitation or acceptance of contributions is destructive of the state's compelling interest in a fair and impartial judiciary. We do not believe anyone can seriously argue that a judge personally soliciting campaign contributions from attorneys having cases before him or her should be permissible. Indeed, the petitioner does not contend that such a solicitation would be protected political speech. Instead, he contends that he did not engage in the alleged conduct.

We find that Canon 5 does advance a compelling state interest and that the state is doing nothing more than seeking a balance between allowing people to elect their judges and safeguarding the process so that the integrity of the judiciary and due process will not be compromised. For all of the above reasons, we reject the arguments presented by the petitioner and find that Canon 5C(2) of the Arkansas Code of Judicial Conduct is narrowly tailored to serve the compelling state interests.

### III. Sufficiency of the Evidence

For his final point on appeal, the petitioner contends that the evidence failed to meet the applicable standard of proof to allow for a sanction by the Judicial Commission. Petitioner urges that the Judicial Commission was required to have clear and convincing evidence of misconduct before issuing him the letter of admonishment. However, our review of the rules suggests otherwise.

Rule 9 of our Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission instructs that the Judicial Commission prepare a written report after a probable-cause hearing, containing its findings of fact and its conclusion on each issue. Rule 9E instructs the Judicial Commission on the appropriate methods to dispose of a case, specifically:

> (2) If it finds, *by concurrence of a majority of members present*, that there has been conduct that is or might be or might become cause for discipline but for which an admonition or informal adjustment is appropriate, it may so inform or admonish the judge, direct professional treatment, counseling, or assistance for the judge, or impose conditions on the judge's future conduct.

Ark. Jud. Disc. & Disab. Comm'n R. 9E(2) (emphasis added).

As previously noted, we will not reverse the Judicial Commission's findings unless they are clearly erroneous. *See Griffen v. Ark. Judicial Discipline & Disability Comm'n*, 355 Ark. 38, 130 S.W.3d 524 (2003). Here, the Judicial Commission had the opportunity to consider the sworn statements by two attorneys, each of whom stated that the petitioner personally asked for a campaign contribution. Petitioner also testified before the Judicial Commission, allowing the Judicial Commission to view his demeanor and to evaluate his testimony first hand. In addition, the petitioner's attorney presented two arguments to the Judicial Commission: that Canon 5C(2) was unconstitutional and that the two attorneys who provided statements to the Judicial Commission were mistaken on the facts.

With this evidence before it, the Judicial Commission, by a vote of six to one, found that there had been conduct that was, or might be, or might become cause for discipline. The Judicial Commission further determined an admonition was appropriate. We conclude that the Judicial Commission's findings were not clearly erroneous based on this evidence. For the foregoing reasons, we deny the petition for writ of certiorari.

Petition denied.

HANNAH, C.J., concurring.

BROWN, J., not participating.

JIM HANNAH, Chief Justice, concurring. I concur in the majority's analysis on the constitutionality of Canon 5C(2)

and in the decision reached based on the issues presented in this case; however, I write separately to discuss the lack of clarity in procedure of the Arkansas Judicial Discipline and Disability Commission that would result in a reprimand or censure of a judge.[1] I am concerned that the Commission's use of the term "probable cause hearing" implies that a noticed formal hearing is being provided when that is not the case. The term "probable cause hearing" does not appear in Amendment 66.[2] Nor does the term appear in the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission.

Rule 9(C) discusses probable cause determination and mandates that this determination is to be made in a "formal meeting" of the Commission. However, Amendment 66 specifically requires notice and a formal hearing before any discipline is imposed, and the meeting provided for in Rule 9 does not constitute a noticed hearing as that concept is commonly understood in Anglo-American jurisprudence. It does not appear to me that under Amendment 66 the Commission is permitted to impose discipline at a meeting of the Commission.

Amendment 66 plainly provides with respect to discipline, suspension, leave and removal, that while the Commission is to receive, initiate, and investigate complaints of judicial misconduct, and thus logically make a determination of probable cause to proceed, it is only after notice and a formal hearing that a judge may be reprimanded, censured, suspended or removed from office. The Commission under Amendment 66(c) may, after notice and a hearing, reprimand or censure a judge. The Commission may also, again after notice and a hearing, recommend to this court that a judge be suspended or removed.

The rules are confused on this issue. They should be redrafted and made consistent with Amendment 66. They should mandate that any reprimand or censure [admonishment or infor-

---

[1] While Amendment 66 authorizes the Arkansas Judicial Discipline and Disability Commission to "reprimand or censure" a judge, Rule 9(E)(2) of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission authorizes the Commission to issue an "admonition" or make an "informal adjustment." Pursuant to this same rule, admonition and informal adjustment mean that the Commission may "inform or admonish the judge, direct professional treatment, counseling, or assistance for the judge, or impose conditions on the judge's future conduct." Rule 9(E)(2). The disparity in terms and lack of clarity in Rule 9(E)(2) complicate the analysis.

[2] Amendment 66 created the Arkansas Judicial Discipline and Disability Commission.

mal adjustment] be undertaken only after a noticed formal hearing. Rule 11 currently provides for such a hearing before making a recommendation to this court to suspend or remove. The decision on lesser disciplinary actions by the Commission should be provided the same hearing. This is consistent with *In re Rules 7 & 9*, 302 Ark. App'x 633, 790 S.W.2d 143 (1990), where this court made reprimands and censures public.