# Supreme Court of Florida

_____

No. SC11-265
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**LANELL WILLIAMS-YULEE,**
Respondent.

[May 1, 2014]

PER CURIAM.

We have for review a referee's report recommending that the Respondent, Lanell Williams-Yulee, be found guilty of professional misconduct. The referee recommended that the Respondent receive a public reprimand as a sanction. We have jurisdiction. See art. V, § 15, Fla. Const.

For the reasons explained below, we approve the referee's findings of fact and recommendation that the Respondent be found guilty of violating Rule Regulating the Florida Bar 4-8.2(b) (Judicial and Legal Officials, Candidates for Judicial Office; Code of Judicial Conduct Applies) for personally soliciting campaign contributions in violation of Canon 7C(1) of the Florida Code of Judicial

Conduct. We therefore reject the Respondent's constitutional challenge to the ban imposed by Canon 7C(1) on a judicial candidate's personal solicitation of campaign contributions, and hold that the Canon is constitutional because it promotes the State's compelling interests in preserving the integrity of the judiciary and maintaining the public's confidence in an impartial judiciary, and that it is narrowly tailored to effectuate those interests.

We disapprove the referee's findings of fact and recommendation of guilt regarding the Respondent's alleged violation of rules 3-4.3 (Misconduct and minor misconduct) and 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another). We approve the referee's recommended sanction of a public reprimand.

## FACTS

The Florida Bar filed a complaint against the Respondent, alleging that she engaged in misconduct in violation of the Rules Regulating the Florida Bar. A referee was appointed, but the proceedings were stayed pending this Court's disposition of Inquiry Concerning a Judge, N. James Turner, No. SC09-1182, which involved the same First Amendment constitutional challenge to Canon 7C(1) that the Respondent raised before the referee and has now raised on review.

Ultimately, however, this Court declined to decide the First Amendment issue in that case. See In re Turner, 76 So. 3d 898, 901 (Fla. 2011).

Following this Court's resolution of Turner, the stay was lifted and the referee heard the Respondent's motion challenging the sufficiency of the complaint on the dual bases of delay and the constitutionality of Canon 7C(1). The referee denied the Respondent's motion. After holding hearings, the referee submitted a report to the Court, making the following factual findings and recommendations.

In September 2009, the Respondent became a candidate for County Court Judge, Group 10, Hillsborough County, Florida. On September 4, 2009, the Respondent signed a campaign fundraising letter, in which she personally solicited campaign contributions. The Respondent admitted to having reviewed and approved the letter.

At the time she signed the letter, no other candidate for the judgeship had been announced. In addition to soliciting campaign contributions, the letter stated that the Respondent served the "community as Public Defender," though her correct title was "assistant public defender." The letter also included a link to the Respondent's website, which correctly referenced her work history as an assistant public defender.

The referee found "that the term public defender is widely used to refer to the specific attorney assigned to a case and not necessarily the elected public

defender." A newspaper article published on November 3, 2009, included the Respondent's representation to a reporter that there was no incumbent in the judicial race for which the Respondent was running.

Before the referee, The Florida Bar alleged that the Respondent's campaign manager incorrectly posted on the Respondent's campaign website that the Respondent was "judge elect," even though the Respondent had never been a judge and had not been elected. The referee rejected the Bar's argument, finding "that the Respondent took reasonable action in directing the campaign manager to obtain her approval prior to making any changes to her website." The referee also found that the Respondent "did not order, have knowledge of, or ratify the campaign manager's actions" regarding the posting of "judge elect."

Based upon the foregoing facts, the referee recommended that the Respondent be found guilty of violating Rules Regulating the Florida Bar 3-4.3 (Misconduct and minor misconduct), 4-8.2(b) (Judicial and Legal Officials, Candidates for Judicial Office; Code of Judicial Conduct Applies), and 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another). The referee recommended that the Respondent be found not guilty of violating rule 4-5.3(b) (Responsibilities Regarding Nonlawyer Assistants; Supervisory

Responsibility), which the Bar alleged the Respondent had violated based on the campaign manager's inaccurate posting on the website.

Regarding the solicitation of campaign funds in her letter signed September 4, 2009, the referee rejected the Respondent's testimony that she understood Canon 7C(1) of the Code of Judicial Conduct would apply only if there were another candidate in the judicial race. Canon 7C(1) provides in pertinent part as follows: "A candidate . . . for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds . . . ." In finding that the Respondent violated Canon 7C(1), the referee stated that "[i]t is clear that the use of 'election between competing candidates' is used to describe the type of judicial office where the prohibition would apply."

In addressing the Respondent's statement to the newspaper reporter, the referee found that the Respondent misrepresented the fact that there was no incumbent in the judicial race for which she was running. Further, the referee found that the Respondent's misrepresentation was published in a newspaper article on November 3, 2009.

With respect to discipline, the referee considered the Respondent's personal history, finding that the Respondent was admitted to The Florida Bar in 1991 and does not have any prior disciplinary history. Additionally, the referee found no aggravating factors and found the following mitigating factors: absence of a prior

disciplinary record; absence of a dishonest or selfish motive; timely good faith effort to make restitution or to rectify consequences of misconduct; and full and free disclosure to disciplinary board or cooperative attitude toward proceedings. The referee consequently recommended that the Respondent receive a public reprimand and awarded costs to The Florida Bar in the amount of $1,860.30.

## ANALYSIS

The Respondent seeks review of the referee's factual finding that she made a misrepresentation to a reporter; the referee's recommendations of guilt as to rules 3-4.3, 4-8.2(b), and 4-8.4(a); and the referee's recommended discipline, which calls for a public reprimand and payment of costs to The Florida Bar.

This Court's standard of review for evaluating a referee's factual findings is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. See Fla. Bar v. Frederick, 756 So. 2d 79, 86 (Fla. 2000). The Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So. 2d 554, 557-58 (Fla. 2005).

### Violation of Rule 4-8.2(b)

The Respondent first challenges the referee's recommendation that she be found guilty of violating rule 4-8.2(b) (Judicial and Legal Officials, Candidates for

Judicial Office; Code of Judicial Conduct Applies). With respect to this rule violation, the Respondent does not challenge the referee's factual findings. Instead, the Respondent admits that she signed the letter soliciting campaign funds, but attempts to justify her misconduct by explaining that she signed the letter while under the impression that Canon 7C(1) did not apply to her since, at the time she signed the letter, there was no other candidate in the race.

The Respondent now understands that the prohibition against solicitation by a judicial candidate applied to her. Nevertheless, even though the Respondent admits that Canon 7C(1) applied to her, she asserts that the referee's recommendation of guilt is incorrect because Canon 7C(1) is unconstitutional in that it limits a judicial candidate's right to engage in free speech by prohibiting a judicial candidate from directly soliciting campaign contributions.

Canon 7C(1) provides in pertinent part as follows:

> A candidate . . . for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible persons to secure and manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law.

On its face, Canon 7C(1) prohibits a judicial candidate from personally soliciting campaign contributions.

This Court recognizes that by prohibiting judicial candidates from personally soliciting campaign contributions, Canon 7C(1) clearly restricts a judicial candidate's speech. Therefore, in order to be constitutional and not in violation of the First Amendment, Canon 7C(1) must be narrowly tailored to serve a compelling state interest. See Firestone v. News-Press Publ'g Co., 538 So. 2d 457, 459 (Fla. 1989) ("Restrictions on first amendment rights must be supported by a compelling, governmental interest and must be narrowly drawn to insure that there is no more infringement than is necessary.").

As this Court has previously stated, Florida has "a compelling state interest in preserving the integrity of [its] judiciary and maintaining the public's confidence in an impartial judiciary." In re Kinsey, 842 So. 2d 77, 87 (Fla. 2003) (citing In re Code of Judicial Conduct (Canons 1, 2, & 7A(1)(b)), 603 So. 2d 494, 497 (Fla. 1992)). Florida is certainly not alone in this regard. Other state supreme courts to address the constitutionality of judicial ethics canons comparable to Canon 7C(1) have held that similar State interests are compelling. See Simes v. Ark. Judicial Discipline & Disability Comm'n, 247 S.W.3d 876, 881 (Ark. 2007); In re Dunleavy, 838 A.2d 338, 351 (Me. 2003); In re Fadeley, 802 P.2d 31, 41 (Or. 1990).

Over twenty years ago, the Oregon Supreme Court, in upholding a judicial ethics canon similar to Florida's Canon 7C(1), stated that the compelling State interest served by the solicitation restriction

> is the state's interest in maintaining, not only the integrity of the judiciary, but also the appearance of that integrity. The persons most actively interested in judicial races, and the persons who are the most consistent contributors to judicial campaigns, are lawyers and potential litigants. The impression created when a lawyer or potential litigant, who may from time to time come before a particular judge, contributes to the campaign of that judge is always unfortunate. Although many or most lawyers may act with pure motives, viz., to ensure a qualified judiciary and to ensure vigorous public debate, the outside observer cannot but think that the lawyer or potential litigant either expects to get special treatment from the judge or, at the least, hopes to get such treatment. It follows that, if it is at all possible to do so, the spectacle of lawyers or potential litigants directly handing over money to judicial candidates should be avoided if the public is to have faith in the impartiality of its judiciary.

In re Fadeley, 802 P.2d at 41.

More recently, the Arkansas Supreme Court, in addressing the constitutionality of a judicial ethics canon comparable to Canon 7C(1), echoed the concerns articulated by the Supreme Court of Oregon, holding that Arkansas' solicitation ban served two separate compelling State interests: (1) ensuring judicial impartiality, and (2) ensuring the public's trust and confidence in the integrity of the judicial system by avoiding the appearance of impropriety. See Simes, 247 S.W.3d at 881-82.

As to the first State interest, ensuring judicial impartiality, the Arkansas

Supreme Court stated as follows:

> Certainly the state has a compelling interest in diminishing the possibility that judges, once in office, will be pressured to decide issues in favor of those who financially supported their campaign. Therefore, in addition to impartiality as it goes to bias, we conclude that the open-mindedness of judges is a sufficient compelling state interest.

Id. at 881.

With respect to the second compelling State interest, avoiding the

appearance of impropriety, the Arkansas court explained as follows:

> The state certainly has a compelling interest in the public's trust and confidence in the integrity of our judicial system. Allowing a judge to personally solicit or accept campaign contributions, especially from attorneys who may practice in his or her court, not only has the possibility of making a judge feel obligated to favor certain parties in a case, it inevitably places the solicited individuals in a position to fear retaliation if they fail to financially support that candidate. Attorneys ought not feel pressured to support certain judicial candidates in order to represent their clients. In addition, the public should be protected from fearing that the integrity of the judicial system has been compromised, forcing them to search for an attorney in part based upon the criteria of which attorneys have made the obligatory contributions.

Id. at 882. These decisions illustrate that other state supreme courts that have

addressed the constitutionality of judicial ethics canons similar to Florida's Canon

7C(1) have reached the same conclusion that this Court reached in In re Kinsey,

842 So. 2d at 87—that protecting the integrity of the judiciary, as well as

- 10 -

maintaining the public's confidence in an impartial judiciary, represent compelling State interests capable of withstanding constitutional scrutiny.

Therefore, in light of this Court's prior holding that Florida has a compelling interest in protecting the integrity of the judiciary and maintaining the public's confidence in an impartial judiciary—a holding that is bolstered by the broad acceptance of comparable compelling State interests by other state supreme courts—we conclude that Canon 7C(1), which furthers these goals, serves compelling State interests. The constitutionality of Canon 7C(1) thus turns on whether the Canon is narrowly tailored to serve these compelling State interests.

The United States Supreme Court has stated that a government regulation is narrowly tailored "if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." Frisby v. Schultz, 487 U.S. 474, 485 (1988). The Respondent contends that Canon 7C(1) fails to satisfy the narrowly tailored requirement, particularly in the context of a mass mailing letter. We disagree.

First, the Respondent's argument ignores that this process includes a candidate's direct receipt of funds. Moreover, personal solicitation of campaign funds, even by mass mailing, raises an appearance of impropriety and calls into question, in the public's mind, the judge's impartiality. Thus, "[t]o protect the independence of the judiciary, the right of judges to engage in political activity has

been restricted."  In re Code of Judicial Conduct (Canons 1, 2, & 7A(1)(b)), 603

So. 2d at 497.

Canon 7C(1), which contains provisions similar to Canons 4.1(A)(8) and 4.4

of the American Bar Association Model Code of Judicial Conduct,[1] is designed to

_____

1.  Canon 4.1 of the American Bar Association Model Code of Judicial
Conduct states in pertinent part: "[e]xcept as permitted by law, or by Rules 4.2,
4.3, and 4.4, a judge or a judicial candidate shall not: . . . personally solicit or
accept campaign contributions other than through a campaign committee
authorized by Rule 4.4."  A.B.A. Model Code of Judicial Conduct, Canon
4.1(A)(8).
    Further, Canon 4.4, which governs the use of campaign committees, states as
follows:

    (A)  A judicial candidate subject to public election may
establish a campaign committee to manage and conduct a campaign
for the candidate, subject to the provisions of this Code.  The
candidate is responsible for ensuring that his or her campaign
committee complies with applicable provisions of this Code and other
applicable law.

    (B)  A judicial candidate subject to public election shall direct
his or her campaign committee:

    (1)  to solicit and accept only such campaign contributions as
are reasonable, in any event not to exceed, in the aggregate, $[insert
amount] from any individual or $[insert amount] from any entity or
organization;

    (2)  not to solicit or accept contributions for a candidate's
current campaign more than [insert amount of time] before the
applicable primary election, caucus, or general or retention election,
nor more than [insert number] days after the last election in which the
candidate participated; and

    (3)  to comply with all applicable statutory requirements for
disclosure and divestiture of campaign contributions, and to file with
[name of appropriate regulatory authority] a report stating the name,
address, occupation, and employer of each person who has made
campaign contributions to the committee in an aggregate value
exceeding $[insert amount].  The report must be filed within [insert

insulate judges from directly engaging in fundraising activity by allowing the

establishment of campaign committees, through which judges can raise campaign

funds without direct participation.  A majority of states have enacted similar

provisions.[2]

Further, every state supreme court that has examined the constitutionality of

comparable state judicial ethics canons has concluded that these types of

---

number] days following an election, or within such other period as is
provided by law.
A.B.A. Model Code of Judicial Conduct, Canon 4.4.

2.  With respect to judicial races involving either an opposed election or
retention with active opposition, the majority of states require that the solicitation
for judicial campaign funds be conducted through a campaign committee.  See,
e.g., Alaska Code of Jud. Conduct, Canon 5C(3); Ariz. Code of Jud. Conduct,
Canon 4, R. 4.1(A)(6); Ark. Code of Jud. Conduct, Canon 4, R. 4.2(B)(1); Colo.
Code of Jud. Conduct, Canon 4, R. 4.3(A); Conn. Code of Jud. Conduct, Canon
5A(4); Idaho Code of Jud. Conduct, Canon 5C(2); Ill. Code of Jud. Conduct,
Canon 7B(2); Ind. Code of Jud. Conduct, Canon 4, R. 4.4(A); Iowa Code of Jud.
Conduct, Canon 4, R. 51:4.4(A); Ky. Code of Jud. Conduct, Canon 5B(2); La.
Code of Jud. Conduct, Canon 7C(2)(b); Me. Code of Jud. Conduct, Canon 5C(3);
Mich. Code of Jud. Conduct, Canon 7B(2)(b); Minn. Code of Jud. Conduct, Canon
4, R. 4.4(A); Miss. Code of Jud. Conduct, Canon 5C(2); Mo. Code of Jud.
Conduct, Canon 4, R. 2-4.2(B); Mont. Code of Jud. Conduct, Canon 4, R. 4.4(A);
Neb. Code of Jud. Conduct, Canon 4, R. 5-304.1(A)(8); N.M. Code of Jud.
Conduct, Canon 4, R. 21-404A; N.Y. Code of Jud. Conduct, Canon 5(A)(5); N.D.
Code of Jud. Conduct, Canon 4, R. 4.6; Ohio Code of Jud. Conduct, Canon 4, R.
4.4(A); Okla. Code of Jud. Conduct, Canon 4, R. 4.4(A); Or. Code of Jud.
Conduct, R. 4-102(D); Pa. Code of Jud. Conduct, Canon 7B(2); S.C. Code of Jud.
Conduct, Canon 5C(2); Tenn. Code of Jud. Conduct, Canon 4, R. 4.4; Utah Code
of Jud. Conduct, Canon 4, R. 4.2(B)(2); Vt. Code of Jud. Conduct, Canon 5C(3);
Wash. Code of Jud. Conduct, Canon 4, R. 4.4; W. Va. Code of Jud. Conduct,
Canon 5C(2); Wis. Code of Jud. Conduct, R. 60.06(4); Wyo. Code of Jud.
Conduct, Canon 4, R. 4.2(B)(4).

provisions are constitutional, as one of a constellation of provisions designed to ensure that judges engaged in campaign activities are able to maintain their status as fair and impartial arbiters of the law. See Simes, 247 S.W.3d at 884; In re Dunleavy, 838 A.2d at 351; In re Fadeley, 802 P.2d at 44.[3] One such state is Oregon, which, like Florida, requires judicial candidates to establish and raise money through campaign committees rather than allowing direct solicitation.

In addressing the constitutionality of Oregon's judicial canon, the Oregon Supreme Court reviewed why campaign committees are necessary, explaining as follows:

> So long as judges are chosen by the electoral process, it will be impossible to deny lawyers and potential litigants the right to give to campaigns or to deny judges the right to seek contributions. Both activities are too important in the scheme of things to permit either to be forbidden outright. Some other, less intrusive method is needed.
> [The canon] is that method. It permits the judge to obtain funds to carry out a campaign but eliminates the specter of contributions going from the hand of the contributor to the hand of the judge. The limitation on the ability to raise funds need not cause the campaign to suffer, if the judge picks good people for his or her campaign finance committee. It is true that the committee, however well suited to the

---

3. As to the federal courts that have considered this issue—whose judges have lifetime appointments and thus do not have to engage in fundraising—the federal courts are split. Several federal courts have held that laws similar to Canon 7C(1) are constitutional. See Wersal v. Sexton, 674 F.3d 1010 (8th Cir. 2012); Bauer v. Shepard, 620 F.3d 704 (7th Cir. 2010); Siefert v. Alexander, 608 F.3d 974 (7th Cir. 2010); Stretton v. Disciplinary Bd. of S. Ct. of Pa., 944 F.2d 137 (3d Cir. 1991). Conversely, other federal courts have held that laws similar to Canon 7C(1) are unconstitutional. See Carey v. Wolnitzek, 614 F.3d 189 (6th Cir. 2010); Weaver v. Bonner, 309 F.3d 1312 (11th Cir. 2002).

> task, may have trouble obtaining as much as the judge might have raised by personal buttonholing, but that is the point.

In re Fadeley, 802 P.2d at 41 (citations omitted). In addressing whether the canon was narrowly tailored, the Oregon Supreme Court explained that its canon did not sweep too broadly because under the Oregon Code of Judicial Conduct, "[s]olicitation of funds by a surrogate of the judge's choice is permissible; only personal solicitation by the judge is foreclosed." Id. at 44.

The same reasoning applies in this case. Under Canon 7C(1), the Respondent was not completely barred from soliciting campaign funds, but was simply required to utilize a separate campaign committee to engage in the task of fundraising. In other words, Canon 7C(1) is narrowly tailored because it seeks to "insulate judicial candidates from the solicitation and receipt of funds while leaving open, ample alternative means for candidates to raise the resources necessary to run their campaigns." Simes, 247 S.W.3d at 883.

We conclude that Canon 7C(1) promotes the State's compelling interests in preserving the integrity of the judiciary and maintaining the public's confidence in an impartial judiciary, and that it is narrowly tailored to effectuate those interests. Therefore, we hold that Canon 7C(1) is constitutional, and we approve the referee's recommendation that the Respondent be found guilty of violating rule 4-8.2(b).

**Violation of Rules 3-4.3 and 4-8.4(a)**

- 15 -

Next, the referee recommended that the Respondent be found guilty of violating rules 3-4.3 and 4-8.4(a) for making a misrepresentation to a reporter. We conclude that this recommendation is not supported by competent, substantial evidence in the record. See Frederick, 756 So. 2d at 86.

At issue is the following sentence included in a newspaper article published on November 3, 2009: "On Tuesday, [Respondent] Williams-Yulee told a Times reporter there was no incumbent for the position she's seeking, though County Judge Dick Greco, Jr. currently holds it." The Bar did not present the reporter's testimony at the hearing, and the Respondent testified that she had told the reporter that there was an incumbent but that he had not announced his candidacy. We conclude that the statement from the newspaper article, standing alone, is insufficient evidence to support the referee's recommendation as to guilt and, therefore, we disapprove the referee's recommendation with respect to rules 3-4.3 and 4-8.4(a).

**Discipline**

The Respondent also seeks review of the referee's recommended discipline, which calls for the Respondent to receive a public reprimand. The Respondent argues that she should not be sanctioned because she did not violate the Bar rules. In contrast, the Bar argues that the referee recommended the appropriate sanction in this case.

- 16 -

In reviewing a referee's recommended discipline, this Court's scope of review is broader than that used to review the referee's findings of fact because, ultimately, it is this Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. At the same time, however, this Court will generally not second-guess the referee's recommended discipline, as long as the recommended discipline has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

The referee found that the Respondent's conduct was negligent, as opposed to being intentional. Thus, standards that address negligence apply to this case. Standards 6.13[4] and 7.3,[5] which both pertain to public reprimands, support the referee's recommendation.

In addition, case law indicates that this Court has imposed a public reprimand in circumstances where the misconduct is neither continuous nor involves an intentional pattern of deceit. Compare Fla. Bar v. Cocalis, 959 So. 2d 163, 167-68 (Fla. 2007) (concluding that the respondent's isolated misconduct

---

4. Florida Standard for Imposing Lawyer Sanctions 6.13 states in pertinent part that "[p]ublic reprimand is appropriate when a lawyer is negligent either in determining whether statements or documents are false . . . ."

5. Florida Standard for Imposing Lawyer Sanctions 7.3 provides in part that "[p]ublic reprimand is appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to . . . the public, or the legal system."

warranted only a public reprimand), with Fla. Bar v. Miller, 863 So. 2d 231, 235 (Fla. 2003) (concluding that the respondent's continuous and intentional pattern of deceit was more egregious than the circumstances under which the Court has approved a public reprimand), and Fla. Bar v. Forrester, 818 So. 2d 477, 484 (Fla. 2002) (concluding that the respondent's conduct did not involve an isolated instance of neglect or a lapse in judgment warranting a public reprimand, but instead involved intentionally concealing an exhibit and misrepresenting its whereabouts). This Court has also imposed a public reprimand where there is an absence of prior misconduct. See, e.g., Cocalis, 959 So. 2d at 168 (noting that the respondent had "no previous disciplinary record"); Fla. Bar v. Shannon, 398 So. 2d 453, 454 (Fla. 1981) (stating that the "Respondent has no record of past professional misconduct").

Moreover, the referee found no aggravating factors and four mitigating factors: absence of a prior disciplinary record; absence of a dishonest or selfish motive; timely good faith effort to make restitution or to rectify consequences of misconduct; and full and free disclosure to disciplinary board or cooperative attitude toward proceedings. Based upon the facts in this case, the standards, and established case law, we conclude that the referee's recommended sanction of a public reprimand is appropriate.

# CONCLUSION

Accordingly, we approve the referee's findings of fact and recommendation of guilt with respect to rule 4-8.2(b), disapprove the referee's findings of fact and recommendation of guilt with respect to rules 3-4.3 and 4-8.4(a), and approve the referee's recommended discipline. By publication of this opinion, Lanell Williams-Yulee is hereby publicly reprimanded.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Lanell Williams-Yulee in the amount of $1,860.30, for which sum let execution issue.

It is so ordered.

PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., and CANADY, J., concur in part and dissent in part.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida; Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida; and Jodi Anderson Thompson, Bar Counsel, The Florida Bar, Tampa, Florida,

　　　for Complainant

Ernest Jay Myers, Orlando, Florida,

　　　for Respondent

Honorable Roberto Arias, Chair, Judicial Ethics Advisory Committee, Jacksonville, Florida; and James Calvin Goodlett, Staff Counsel, Judicial Ethics Advisory Committee, Tallahassee, Florida,

Responding with comments