# Supreme Court of Florida

_____

No. SC19-1879
_____

**THE FLORIDA BAR,**
Complainant,

v.

**BRYON R. AVEN,**
Respondent.

May 27, 2021

PER CURIAM.

We have for review a referee's report recommending that Bryon R. Aven be found guilty of professional misconduct and reprimanded. We have jurisdiction. *See* art. V, § 15, Fla. Const.

The Florida Bar (Bar) filed a complaint on November 6, 2019, alleging that Respondent, Bryon R. Aven, violated numerous Rules Regulating the Florida Bar (Bar Rules) and several sections of Canon 7 of the Florida Code of Judicial Conduct, which also constituted violations of the Bar Rules, in the course of his unsuccessful campaign for Marion County Court Judge in the

August 2018 primary election. We appointed a referee for further proceedings pursuant to the Bar Rules.

The Bar's complaint pertained to Respondent's conduct in running for Marion County Judge against incumbent Judge Robert E. Landt in the August 28, 2018, primary election. Specifically, it was alleged that Respondent attempted to impugn Judge Landt's integrity, citing his record in criminal cases presided over, while repeatedly implying that Respondent was biased in favor of state prosecutors and law enforcement. Based upon this misconduct, the referee recommended that Respondent be found guilty of violating Bar Rules 3-4.3 (Misconduct and Minor Misconduct); 4-8.2(a) (Judicial and Legal Officials; Impugning Qualifications and Integrity of Judges or Other Officers); and 4-8.2(b) (Candidates for Judicial Office; Code of Judicial Conduct Applies); and Canon 7 of the Code of Judicial Conduct (A Judge or Candidate for Judicial Office Shall Refrain From Inappropriate Political Activity), specifically, Canon 7A(3)(a) (candidate for judicial office shall be faithful to the law, maintain professional competence, and not be swayed by partisan interests, public clamor, or fear of criticism); 7A(3)(b) (candidate for judicial office shall maintain the dignity

- 2 -

appropriate to judicial office and act in a manner consistent with impartiality, integrity, and independence of the judiciary); 7A(3)(e)(i) (candidate for judicial office shall not, with respect to parties or classes of parties, cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with impartial performance of adjudicative duties of office); and 7A(3)(e)(ii) (candidate for judicial office shall not knowingly misrepresent the identity, qualifications, present position or other fact concerning candidate or opponent).

Upon review of the Stipulation of Facts and Consent Judgment as to Discipline to be Imposed, we conclude that the referee's findings in the Report of Referee Accepting Consent Judgment are sufficient under the applicable rules to support the recommendations. *See Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005). Further, the referee recommended that Respondent receive a reprimand. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. *See Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15,

- 3 -

Fla. Const. In this case, we approve the referee's recommendation as reasonable and supported by existing case law. *See Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999).

However, we write to place future candidates for judicial office on notice that this Court takes misrepresentations that cast a sitting judge in a false light seriously because of their potential to undermine confidence in the rule of law. With respect to candidates who have won judicial elections using similar misrepresentations, and related campaign-related misconduct, we have removed the newly elected judges from office. *See, e.g.*, *In re Santino*, 257 So. 3d 25 (Fla. 2018); *In re Renke*, 933 So. 2d 482 (Fla. 2006); *In re McMillan*, 797 So. 2d 560 (Fla. 2001). Accordingly, in the future, similar misconduct presented in the posture of this type of case should be expected to result in a more severe sanction, including suspension.

Based upon our review of the referee's report, the stipulation of facts, and the consent judgment, we hereby reprimand Bryon R. Aven, which reprimand shall be published in the *Southern Reporter*. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Bryon

- 4 -

R. Aven in the amount of $3673.66, for which sum let execution issue.

It is so ordered.

LAWSON, COURIEL, and GROSSHANS, JJ., concur.
POLSTON and MUÑIZ, JJ., concur in result.
CANADY, C.J., dissents with an opinion.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

CANADY, C.J., dissenting.

Because I conclude that a reprimand is an insufficient sanction for Respondent's misconduct, I would reject the stipulation. In my view—based on the stipulated facts—a nonrehabilitative suspension would be appropriate in this case.

LABARGA, J., dissenting.

I concur with the majority that the referee's findings are sufficient to support Respondent's culpability for violating numerous Rules Regulating the Florida Bar and several sections of Canon 7 of the Code of Judicial Conduct. However, I disagree with the majority that the referee's recommended discipline—a public reprimand via publication of the majority opinion—is an adequate

sanction for Respondent's egregious conduct during a judicial campaign. I therefore respectfully dissent.

As noted by the majority, The Florida Bar filed a complaint alleging that Respondent violated numerous Rules Regulating the Florida Bar and several sections of Canon 7 of the Florida Code of Judicial Conduct in the course of his unsuccessful campaign for a seat on the Marion County Court. The referee conducted a final hearing on August 11, 2020, and September 2, 2020. However, on October 6, 2020, prior to the sanctions hearing, the parties entered into a consent judgment which recommended a public reprimand as the discipline to be imposed. Thereafter, the referee filed his Report of Referee Accepting Consent Judgment (report) accepting the parties' stipulation and recommended sanction.

The stipulated facts contained in the report revealed that Respondent ran for Marion County Judge in the August 28, 2018, primary election against incumbent Judge Robert E. Landt. During the campaign, Respondent maintained pages on various social media platforms, hosted a campaign website, and appeared at public forums. According to the referee, "Although the campaign website was hosted by a campaign committee, respondent

- 6 -

acknowledged and understood that he was aware of all postings on the site, approved the format and the text, and accepted the premise that it was his responsibility to assure that the context and the messaging were ethically proper and within the rules."

During the course of his judicial campaign, Respondent made the following statements on his campaign website:

> A motion to suppress is filed when a defendant seeks a judge to order that evidence obtained by law enforcement be found inadmissible. Granting a motion to suppress requires the court to find that law enforcement violated the rights of the defendant. Generally, law enforcement officers do an excellent job following the law and respecting the rights of the defendant. The majority of all motions to suppress are denied.

> Robert Landt has presided over 23 contested hearings involving motions to suppress. In 14 of the 23 hearings where he has ruled, he found that law enforcement officers have violated the rights of the defendant, excluding the State from using critical evidence against the defendant. These are the same officers that appear in every other court in Marion County.

According to the report, Respondent asserted in his campaign website that Judge Landt had the "Fewest Sentences Appealed by Defendants" and the "Most State Appeals." The report noted the following:

> [U]nder the heading "Most State Appeals," respondent made the following statement before listing links to state

appeals against Judge Landt: "From January 2013 to present, the State Attorney's Office has appealed the decisions of Marion County Judges a total of 12 times. Robert Landt has been appealed by the State ten times."

. . . Under the heading "Fewest Sentences Appealed by Defendants," Respondent made the following statement: "Defendant's [sic] generally appeal a judgment and sentence because of the findings made by the court of the sanctions imposed. The harsher a judge sentences defendants, the more defendants will appeal."

Following these statements on his campaign website, under the heading "Fewest Sentences Appealed by Defendants," Respondent presented a list comparing the lesser number of times Judge Landt's decisions were appealed by criminal defendants to the greater number of times that defendants appealed the decisions of other Marion County judges.

Given these undisputed facts, the referee made the following conclusions:

Regarding respondent's statements about Judge Landt's rulings on motions to suppress, respondent improperly interjected personal bias, and in effect, offered a promise to the voting public that he would handle such matters differently than the current presiding judge.

. . . Respondent's statements about the number of appeals concerning Judge Landt were misleading. It was problematic to address this issue on a website with a post when there are so many other facets of appellate review. Such an assertive headline, without equally

- 8 -

establishing full context and analysis, communicates to the voting public that the incumbent has, and shows, disfavor to the state. And in a binary choice in a campaign, in effect, the message is "I won't be such a person."

. . . The combination of the headline on respondent's website landing page and the different sections taken in conjunction with the editorial, opinionated assertions made by respondent in his postings, misled the voting public and undermined public confidence in the judiciary.

. . . The evidence presented was clear and convincing to establish that respondent expressly and intentionally implied that the incumbent judge favored criminals, disfavored law enforcement, disfavored the state attorney, and that he, as a candidate, would do differently.

. . . While respondent did not fully accept responsibility for his conduct, respondent acknowledged how one could interpret and/or view the campaign messaging in less than and below the standards that he must be held to.

Based on these findings, the referee correctly found that Respondent violated Canon 7A(3)(a) of the Florida Code of Judicial Conduct, which provides that a candidate for judicial office "shall be faithful to the law and maintain professional competence in it, and shall not be swayed by partisan interests, public clamor, or fear of criticism"; Canon 7A(3)(b), which requires that a candidate for judicial office "shall maintain the dignity appropriate to judicial

- 9 -

office and act in a manner consistent with the impartiality, integrity, and independence of the judiciary, and shall encourage members of the candidate's family to adhere to the same standards of political conduct in support of the candidate as apply to the candidate"; Canon 7A(3)(e)(i), which provides that a candidate for judicial office "shall not . . . with respect to parties or classes of parties, cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office"; and Canon 7A(3)(e)(ii), which provides that a candidate for judicial office "shall not . . . knowingly misrepresent the identity, qualifications, present position or other fact concerning the candidate or an opponent."

In many respects, the implications made in Respondent's campaign website by his campaign committee are similar to the offending misrepresentations made in *In re Santino*, 257 So. 3d 25 (Fla. 2018). Santino's campaign committee for an open seat for Palm Beach County Judge published an email addressed to potential voters which listed her experience as a probation officer and a victim services advocate for victims of rape, homicide, and

domestic violence, while describing her opponent's legal experience as "limited to criminal defense—representing murderers, rapists, child molesters and other criminals." *Id.* at 27. Soon thereafter, a local newspaper ran an article titled "PBC race gets ugly—some say—in Donald Trump-like way." *Id.* Rather than retracting or apologizing for her campaign's disparaging remarks, Santino told the newspaper reporter, "I completely respect, and I'm proud of our justice system, and while every person is entitled to a defense, Mr. Lerman is not a public defender, and chooses to represent individuals who commit heinous crimes." *Id.* Thereafter, the tone of the campaign deteriorated even further with Santino making additional improper remarks. Ultimately, Santino was elected and took office. Soon thereafter, she faced a Judicial Qualifications Commission (JQC) inquiry which ultimately concluded with a recommendation of removal from office—a recommendation that a majority of this Court accepted and imposed.

In considering the proper discipline in *Santino,* "we first considered the effect that Santino's actions had on the public's trust in the judiciary." *Id.* at 33. We noted that "Florida has a compelling interest in protecting the integrity of the judiciary and

- 11 -

maintaining the public's confidence in an impartial judiciary." *Id.* (quoting *Fla. Bar v. Williams-Yulee*, 138 So. 3d 379, 385 (Fla. 2014), *aff'd*, 575 U.S. 433 (2015)). We explained:

> Santino's numerous statements during the campaign evidenced a bias against criminal defendants, toward whom she imputed guilt; against criminal defense attorneys, whom she implied had some character fault because they "choose" to represent criminal defendants; and in favor of victims, whom she boasted that she worked to protect during her legal career. Such statements are sufficient to create fear on the behalf of criminal defendants—who are entitled to a presumption of innocence under the basic tenets of our judicial system—that they would not receive a fair trial or hearing.

*Santino*, 257 So. 3d at 35-36.

Here, likewise, the referee concluded that "[t]he evidence presented was clear and convincing to establish that respondent expressly and intentionally implied that the incumbent judge favored criminals, disfavored law enforcement, disfavored the state attorney, and that he, as a candidate, would do differently." As noted in *Santino*, "[t]his conduct is antithetical to the conduct expected of judicial candidates." *Id.* at 29 (quoting JQC's notice of formal charges).

In *Santino,* we also addressed the concern of "allow[ing] one guilty of such egregious conduct to retain the benefits of those violations and remain in office." *Id.* at 36 (quoting *In re Alley*, 699 So. 2d 1369, 1370 (Fla. 1997)). In pondering the appropriate discipline, we considered Judge Santino's post-election remarks concerning her view of the seriousness of her violations and the discipline she anticipated would be imposed. We noted the following exchange at a social gathering:

> Santino defeated Lerman in the general election and was sworn in as a Palm Beach County Court Judge on January 3, 2017. She was subsequently asked at a social gathering whether misconduct charges could possibly lead to her removal. According to the individual who asked the question, Santino responded to the following effect: "No. I think it . . . won't rise to that. *It will be probably a fine. It's not a big deal.*"

*Santino*, 257 So. 3d at 32.

Given that expectation, the Investigative Panel of the JQC contrasted Santino's remorseful and apologetic response to the JQC's Notice of Investigation, and again in her sworn testimony before the Investigative Panel, with the following allegation:

> [I]t is difficult to escape the conclusion that you and your campaign consultants employed a "win-at-all-costs," and pay the fine later strategy. This conduct is antithetical to the conduct expected of judicial candidates.

- 13 -

*Id.* at 29 (quoting notice of formal charges). This Court emphatically rejected such campaign tactics and expressed the following sentiments:

> We refuse to endorse a "win-at-all-costs-and-pay-the-fine-later" strategy, especially in light of our past warnings and stated intolerance for the kinds of campaign violations at issue here. By her own admission, had we imposed a fine as a sanction, it would confirm that Santino's violations were "not a big deal." Moreover, if this Court imposed a suspension, it would send a message to all attorneys campaigning for judicial office that they may commit egregious violations of Canon 7 during their campaigns and if they win, a suspension or a fine or both will be the only result. They will be allowed to reap the benefit of their misconduct by continuing to serve the citizens of this state. This we cannot condone.

*Id.* at 36.

Here, unlike *Santino* where the candidates ran for an open judicial seat, Respondent ran against a sitting judge. As noted earlier, Respondent's campaign employed similar "win-at-all-costs-and-pay-the-fine-later" tactics to those employed in *Santino*. Respondent expressly and intentionally implied that his opponent favored criminals, disfavored law enforcement, disfavored the state attorney, and that he would do differently.

- 14 -

Despite Respondent's egregious conduct and serious violations of numerous Rules Regulating the Florida Bar and several sections of Canon 7 of the Florida Code of Judicial Conduct, the majority accepts the referee's recommendation and imposes a mere reprimand as a sanction. In doing so, the majority offers the following warning:

> However, we write to place future candidates for judicial office on notice that this Court takes misrepresentations that cast a sitting judge in a false light seriously because of their potential to undermine confidence in the rule of law. With respect to candidates who have won judicial elections using similar misrepresentations, and related campaign-related misconduct, we have removed the newly elected judge from office. *See, e.g.*, *In re Santino*, 257 So. 3d 25 (Fla. 2018); *In re Renke*, 933 So. 2d 482 (Fla. 2006); *In re McMillan*, 797 So. 2d 560 (Fla. 2001).

Majority op. at 4.

Unfortunately, in situations such as in *Santino* where the candidate who utilizes the "win-at-all-costs-and-pay-the-fine-later" tactics actually wins the election, a lengthy suspension, even without pay, may be viewed as worth the prize of a guaranteed commission for a six-year term in office. *See, e.g., In re McMillan*, 797 So. 2d 560, 573 (Fla. 2001) (noting the risk of sending the "wrong message to future candidates; that is, the end justifies the

means and, thus, all is fair so long as the candidate wins"). After all, once the suspension period ends, the judge will still have the remainder of the term in office to enjoy and can seek reelection thereafter. Thus, given the magnitude of the prize to be won, the majority's warning may not, unfortunately, serve as much of a deterrent.

Here, because Respondent did not take office, the question of removal or suspension from office is not an issue. The only question is the appropriate Bar discipline to be imposed. Given the similarities of Respondent's actions to those in *Santino*, his Bar discipline should be a suspension from the practice of law for at least sixty days, in addition to a public reprimand to be administered by The Florida Bar. While, as noted above, a suspension may not deter such behavior in some cases in the future, it will, however, serve as a stronger message that this Court will not tolerate the "end justifies the means" approach utilized by Respondent in this case.

I respectfully dissent.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, Tallahassee, Florida, and Laura N. Gryb, Bar Counsel, The Florida Bar, Orlando, Florida,

    for Complainant

Scott Kevork Tozian of Smith, Tozian, Daniel & Davis, P.A., Tampa, Florida,

    for Respondent